## Freeman Crenshaw *against* Bernard M'Kiernan.

IN the Circuit Court of *Limestone* County, *Bernard M'Kiernan* declared in assumpsit against *Freeman Crenshaw*, as endorser of a promissory note of *Stump* and *Cox*, dated 15th of *October*, 1818, payable to *John P. Erwin* twelve months after date, at the *Branch Bank* of *Tennessee* at *Nashville*, endorsed by *Erwin* to *Crenshaw*, and by him to the plaintiff; " and the plaintiff in fact says, that afterwards, to " wit, on the 18th day of *October*, 1819, at the *Branch Bank*, " &c., said note, endorsed as aforesaid, was duly presented " to the Cashier of said Bank for payment thereof ; and he " the said Cashier was then and there requested to pay said " sum of money, &c. But that the said Cashier answered " that no provision had been made at said Bank for payment " of said note, and did not, nor would at said time, &c. or " at any other time afterwards, pay the same or any part " thereof; nor did said *Stump* and *Cox* or any other person " then and there pay said sum of money or any part there- " of, &c." stating the protest, notice to defendant, super se assumpsit and breach in the usual form. Verdict and judgment for the plaintiff.

*Crenshaw* here assigned as Errors :

1, There is no averment in the declaration that *Stump* and *Cox* had not paid the money specified in the note before the action was brought.

2, The declaration does not ascertain any sufficient and legal cause of action against the plaintiff in Error.

*M'Kenley* for plaintiff ; *Hopkins* and *Martin* for defendant in Error.

The case was argued at *December* term, 1822, continued on advisare, and again argued at this term.

Judge *Crenshaw* delivered the opinion of the Court.

As to the first assignment, the declaration does aver that *Stump* and *Cox* did not pay, but wholly refused so to do on the 18th day of *October*, 1819, which was prior to the commencement of the action. One demand and refusal to pay is sufficient to charge the endorser, and it is not necessary to aver more than is sufficient. A continued neglect or refusal to pay, from the time of the demand to the commencement of the action, is implied. Were it essential to aver pro forma that *Stump* and *Cox* had not paid not only at the

Endorsee against endorser of promissory note, dated 15th *October*, 1818, payable at the N. Bank, 12 months after date.

1, Averment of presentment at the Bank to the Cashier, and demand of payment on the 18th of *October*, 1819, and that neither makers nor any one else on their behalf then and there paid, is, especially after verdict, sufficient allegation that makers did not pay before action brought.

2, As between endorsee and endorser a promissory note is a bill of exchange, and a demand of payment and notice, &c. on the last day of grace is good.

3, On a note payable at a Bank, demand of the Cashier is sufficient.

DECEMBER, 1824.

Freeman Cren-
shaw
v.
Bernard M'Kier-
nan.

time expressed, but at any other time before the suit was brought, such continued refusal to pay might be inferred from the allegation in the declaration "that the defendant hath not yet paid," &c. The maker and the endorser are both liable to pay to the endorsee, and he can have but one satisfaction. The legal import of the allegation is that he has not received payment from either. But regardless of these circumstances, I am of opinion that the defect, if any, was cured by the verdict.

The second assignment embraces principles which materially affect many transactions of the commercial world. I approach the subject with some diffidence, and with much respect for the opinions of those who may differ from me. The main questions in the discussion on this assignment were, whether an endorsed promissory note between the endorser and endorsee acquires the negotiable qualities and properties of a bill of exchange. Whether the declaration shews that the endorsee has taken all requisite steps in order to charge the endorser? And especially whether the days of grace and the law merchant applicable to bills of exchange apply to this case? These questions are of such consequence to the interests of the people of this country, that it is a matter of some wonder that they have not before this late period been settled by judicial decisions, or by Legislative enactment. By the 4th Section of the Act of 1807, (Laws Ala. p. 68,) the payee of an order in writing for the payment of money may sue the drawer, or after acceptance the drawee, but cannot sue the drawer before notice of non-acceptance or before notice of a protest. This Statute gives the description of a bill of exchange ; for a bill of exchange is nothing more than a request or order in writing for the payment of money, and notice of non-acceptance or non-payment is an essential pre-requisite in order to charge the drawer. Now every endorsement of a promissory note for the payment of money, is an order in writing for the payment of the money, and consequently a bill of exchange, in which the endorser stands in the place of the drawer, the endorsee in the place of the payee, and the maker in the place of the drawee of a bill of exchange. Then the Statute virtually authorizes the endorsee of a promissory note to maintain an action against the endorser, and gives to the note at least some of the qualities and properties of a bill of exchange. But if any doubt remained, it must be removed by the clear and explicit terms of the first Section of the Act of 1812, (Laws Ala. p. 69,) by which it is declared, that promissory notes, and indeed all other instruments of writing for the payment of money, or any other

DECEMBER, 1824.

Freeman Cren-
shaw
v.
Bernard M'Kier-
nan.

thing, may be assigned by endorsement, and that the endorsee may maintain an action against the endorser as in cases of inland bills of exchange. This Statute manifestly places an endorsed promissory note on the same ground with an inland bill of exchange, and gives it the same negotiable qualities and properties in all cases where the action is by the endorsee against the endorser. If this was not the intention of the Legislature, no definite meaning can be attached to the words " as in cases of inland bills of exchange ;" for the Statute had already given the right of action to the endorsee against the endorser. It is fairly to be inferred that the action and the rights of the parties are to be governed by the same rules which govern in cases of inland bills of exchange. These words of our Statute are nearly the same with those of the Statute of Ann, by which in England promissory notes are in most respects placed on the same footing with bills of exchange.

What are the rules which govern in cases of inland bills? By the sixth Section of the Act of 1807, bills of exchange for any sum not less than $20, drawn or dated at any place within the State (then territory) upon any person within the same, are in all respects to be regulated and governed by the same laws, customs, and usages, which regulate and govern foreign bills of exchange. This Section furnishes a complete description of an inland, in contradistinction to a foreign bill, and places them on the same grounds. What then are the laws, customs, and usages which regulate foreign bills, and where are they to be found? They constitute an essential part of the law merchant, and are now recognized as a part of the common law. For a knowledge of them we must resort to the same source whence we derive all our notions of the common law—to the usages and customs sanctioned by the commercial world time out of mind. As between the endorser and endorsee, a promissory note is then on the same footing with an inland bill of exchange ; an inland bill must be governed by the laws, customs, and usages which govern foreign bills, and for a knowledge of these we must resort to the law merchant as a part of the common law.

By the law merchant, as recognized in the United States and in England, the drawee (unless the bill be payable on demand or at sight,) is allowed three days of grace after the bill is due before it can be protested for non-payment, or the payee or endorsee can resort to the drawer or endorser, the drawee not being bound to pay before the last day of grace ; the custom is not to present the bill for payment before that day ; and it seems that an earlier presentment for

38

DECEMBER, 1824.

Freeman Cren-
shaw
v.
Bernard M'Kier-
nan.

(a) *Ch. Bills,*
227, 252, 263,
320, &c.

payment would be insufficient to charge the drawer or en-
dorser.

But another material question made in the argument is,
can the bill or note be protested for non-payment, and can
notice be given to the drawer or endorser on the last day of
grace, or is the plaintiff bound to wait until the expiration
of the last day of grace before he gives notice of non-pay-
ment? It seems that demand for payment of a foreign bill
should be made on the day of payment, to wit, on the last
day of grace, and notice sent by the earliest ordinary con-
veyance to the party to whom the holder means to resort.
But in case of an inland bill, it is not necessary to give no-
tice on the day of refusal, but it must be given on the day
after the bill becomes due, to wit, on the day immediately
following the last day of grace.(a)  I do not know that by
these rules it was intended to make any substantial distinc-
tion between a foreign and an inland bill, at least I am una-
ble to discover any good reason for such distinction.  It is
to be admitted, that notice given on the day immediately
following the day of payment would be sufficient; but it
does not necessarily follow that notice given on the day of
payment, and after refusal to pay, would not be equally suf-
ficient. I take it to be a correct doctrine, that if payment is
refused when a note or bill is presented on the day of pay-
ment, the holder is not bound to wait until the last moment
of that day, but may forthwith give notice and take any re-
quisite step to make the drawer and endorser liable.  This
at least is the doctrine in case of foreign bills; and the laws,
usages, and customs, which govern these must (as has been
shewn) govern the case under consideration.

The note here was presented for payment at the Bank,
where it was payable, on the last day of grace, and after-
wards on the same day protested for non-payment and no-
tice thereof given to the endorser. This was not premature,
but in strict conformity to the law, as I have here stated it.
If from the language of the note as described in the decla-
ration it is to be understood that payment at the Bank means
payment by the Bank, then I presume that a presentment to
the Cashier was sufficient; for he usually transacts such bu-
siness for the Bank of which he is Cashier.  But I can view
the Bank in no other light than merely as the place desig-
nated by the note for payment; and the presentment having
been made there within the proper hours, it was the duty of
the maker to be there ready to pay either in his own person
or by his representative.  It was not necessary to aver or
prove the rules and customs of the Bank, and that the note
was presented for payment according to those rules and cus-

toms. The Record informs us that the Record was *duly presented* for payment at the Bank ; and if so, it must have been according to the rules and customs of the institution within the hours of business and to a proper person. If it was to be paid by the Bank, and from the evidence on the trial it appeared that it was not presented within the customary hours of business, or according to the rules of the institution, the plaintiff, I apprehend, would not be entitled to recover. It has been argued, that if a promissory note, by virtue of an endorsement, acquires the negotiable qualities and properties of, and is to be governed by, the same rules as a bill of exchange, the same may be said of all instruments of writing, whether for the payment of money or any other thing ; and that according to this mode of reasoning, an instrument of writing for the delivery of specific articles, when it is endorsed, assumes the resemblance of a bill of exchange and must be governed by the same rules. To this it is to be answered, that if a fair construction of the Statute leads to such conclusion, it is the Legislative power alone which can remedy the evil. When a case shall arise in which an evil shall be felt in the effect of the Statute, the proper power in the government will, I doubt not, apply the remedy.

I have here noticed some positions, and endeavoured to answer some objections which were made on the first argument of this case but were not urged in the last.

Upon the whole view of the case, the Court is satisfied that a good cause of action, and in a legal manner, is set out in the declaration, and that the judgment of the Circuit Court must be affirmed.

Judge *Minor* having argued the case on the part of defendant in Error, at *December* term, 1822, did not sit.